**Lloyd BRACE, et al., Plaintiffs,**

v.

**Suzanne VERRIER, et al., Defendants.**

**Civ. No. 93–52–P–C.**

United States District Court, D. Maine.

April 27, 1993.

Robert Mittel, Mittel, Asen, Eggert & Hunter, Portland, ME, for plaintiffs.

Neil Jamieson, Potter & Prescott, Saco, ME, for defendants.

MEMORANDUM AND ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

GENE CARTER, Chief Judge.

The parties in this case are former domestic partners and current competitors in the

mail order and retail rose business. Plaintiffs now seek relief for alleged disparagement under the Lanham Act, 15 U.S.C. § 1125(a), Maine's Deceptive Trade Practices Act, 10 M.R.S.A. § 1212, subd. 1 H, and the common law. They also seek damages for breach of contract and an accounting. Now before the Court are Plaintiffs' Motion for a Preliminary Injunction[1] (Docket No. 2) and Defendants' Motion to Strike plaintiffs' reply memorandum and accompanying affidavits (Docket No. 12).

The facts as shown by Plaintiffs' verified complaint[2] and Defendant Suzanne Verrier's affidavit attached to her response are as follows. Plaintiff Brace and Defendant Verrier were involved in a romantic relationship and lived together from spring 1990 until July 1992. When Brace moved in with her, Verrier was the proprietor of a retail and mail order rose business. Brace had no prior knowledge of the rose business, but he began to work in the business, contributing both cash and labor. A portion of Brace's prior experience had been in the field of advertising for mail order clients. During his tenure with the business, the mailing list grew from approximately 1700 names to approximately 7200 names. In February 1991, Verrier formed the corporate Defendant, Forevergreen Farm, Inc. Brace continued his involvement with the business.

In July 1992 in the Maine District Court, Verrier sought a Temporary Order for Protection from Abuse against Brace. Brace moved out of Verrier's home. An order was entered which, while not making findings concerning abuse, prohibited Brace from entering Verrier's property and set a schedule for him to retrieve his personal belongings. The order acknowledged that "there remain unresolved issues relating to the value of Defendant's interest in the subject business" which would be resolved either through negotiation or through separate litigation. The order also required the parties to "enter into a joint confidentiality agreement that prevents either party from disclosing information belonging to the subject business to any third party and further prevents either party from making any disparaging remarks about the other, the subject business or business practices to any third party for any purpose."

The confidentiality agreement was entered into by Brace and Verrier on September 4, 1992. Its purpose was to protect the trade secrets of the business and preserve the reputation of the parties. The agreement provided specifically that all trade secrets of Forevergreen Farm would remain the property of that business and would not be disclosed to any third person without the written permission of the other party. It also provided that all business records, including mailing lists, in the possession of either party shall be produced readily to the other and shall not be disclosed to any third persons other than counsel. Finally, the parties agreed not to disparage the character, reputation for honesty, business dealings or ethics of each other in communications with third parties.

1. Plaintiffs filed their Motion for a Preliminary Injunction with the complaint on March 4, 1992. On March 9, 1993, Plaintiffs filed a Motion for a Temporary Restraining Order on the grounds that Defendants' attorney could not accept service of the complaint. (Docket No. 4). A telephone conference was held with Magistrate Judge Cohen on March 12, and Defendants filed their answer and counterclaim and responded to the Motion for a Preliminary Injunction on March 19, 1993 (Docket Nos. 6 and 7). Since this is not an *ex parte* proceeding and Defendants have had a full opportunity to respond, the Court finds the Motion for a Temporary Restraining Order moot and will address the Motion for a Preliminary Injunction.

2. The Court has serious doubts about accepting Brace's Verified Complaint as the factual basis for his motion. The portion of the complaint signed by Brace to attest to the truthfulness of its allegations is a photocopy. The notary's signature attesting to the authenticity of the signature, however, is in blue ink and appears to be original. Subsequent to the filing of this "Verified Complaint," but before Defendants had answered, Plaintiff filed an Amended Complaint, which is not verified.

The Court will not delay acting upon this motion in order to determine exactly what Plaintiffs intended. Given the outcome of this motion, there is no prejudice to Defendants from the Court's consideration of the facts set forth in the purported "Verified Complaint." The Court will, however, order Plaintiffs to set the record straight by filing whatever documents are necessary.

Brace is now the sole shareholder of the corporate Plaintiff, The Roseraie at Bayfields, a retail mail order rose business. The Roseraie uses the mailing list of Forevergreen Farm which Brace had on his computer plus an additional 3200 names generated by Brace since he left. The Roseraie mailed its catalogs in early January 1993. The catalog contains an acknowledgement thanking Verrier for setting Brace "on this path, which now sadly diverges from hers."

In early February Verrier sent a Forevergreen Farms postcard to "Gardening Friends" stating that "the Forevergreen Farm mailing list has been taken without our permission and is being utilized by another Maine company. We have in no respect, sanctioned the use of our mailing list or the mailing of a look-alike catalog to our customers." The card also expressed Verrier's desire to continue doing business with the card recipient.

Plaintiffs argue that Brace was Defendants' partner and as such was entitled to use the mailing list. They further argue that the postcard falsely accuses them of taking and using the list without permission in violation of the Lanham Act, Maine's Deceptive Trade Practices Act, and Maine's tort law. Plaintiffs do not seek a typical prohibitory injunction barring Defendants from making the allegedly false statements. Rather they seek an affirmative injunction ordering Defendants to pay for the printing and sending of a corrective postcard acknowledging the false allegations. Defendants deny that they were involved in a partnership with Brace and argue that Plaintiffs have no right to the mailing list and in fact are prohibited by the confidentiality agreement from using it.

■ Under the well-established rules of this Court and the First Circuit Court of Appeals, in order to obtain preliminary injunctive relief, a plaintiff must show (1) that he or she will suffer irreparable injury if the injunction is not granted; (2) that this injury outweighs any harm that might be caused to the Defendants by the granting of the injunction; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the granting of the injunction will not adversely affect the public interest. *See e.g.,*

*Stanton v. Brunswick School Department,* 577 F.Supp. 1560, 1566 (D.Me.1984). After careful examination of the rather sparse record now before it, the Court cannot find that the preliminary relief requested by Plaintiffs is appropriate in this case.

Myriad factual and legal issues must be decided before it can be determined whether Plaintiffs are likely to succeed on the merits of this case. For example, it will be necessary to determine whether Brace and Verrier were indeed partners in the rose business, and if so what the rights of each were at the dissolution of the partnership. Because the parties have come forward with opposing statements of their intent concerning these matters, it would not be prudent for the Court to make these decisions on the scanty record now before it. Other demands on the Court's time have prevented the Court from scheduling an evidentiary hearing before this date. The Court need not resolve the issue of likelihood of success at this time, however, for it is clear that given the nature of the injunction sought by Plaintiffs, they cannot show that any injury they might suffer if the injunction is not granted immediately outweighs the harm that might be caused to Defendants if it is granted.

■ The primary purpose for granting a preliminary injunction is to preserve the relative positions of the parties until a trial on the merits can be held. *Paris v. Department of Housing and Urban Development,* 843 F.2d 561, 583 (1st Cir.1988); *Stanton,* 577 F.Supp. at 1567. Plaintiffs here have alleged that Defendants disparaged their business practices by representing to prospective customers that Plaintiffs wrongfully used the mailing list. Defendants argue that Plaintiffs indeed are not entitled to use the list. If the Court were to order Defendants to mail out the requested corrective postcard retracting their assertion of Plaintiffs' improper use before a trial on the merits is held, the trial would be rendered moot because Defendants would, in effect, have been forced to concede liability. This would constitute irreparable harm to Defendants. *See Stanton,* 577 F.Supp. at 1567.

On the other hand, the gravamen of Plaintiffs' complaint is that their business reputation has been damaged causing them to lose business. They seek the injunction to restore their competitive position during the rose mail order season which they characterize in their brief as occurring primarily between January and April. Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction, at 9.[3] It is now the end of April. Although Plaintiffs might still suffer some harm this year if their legal arguments are correct, the major part of the harm for this year apparently has been done.

Defendants have represented to the Court that they are willing to waive discovery and proceed with an expedited trial. Memorandum of Law in Support of Defendants' Objection to Plaintiffs' Motion for Injunctive Relief, at 1. In any event the Court's scheduling order (Docket No. 16) foresees trial occurring in November 1993. If Plaintiffs prove at trial that Defendants have in fact disparaged them, the Court can, if it deems it appropriate, still issue the requested injunction so that Plaintiffs' reputation will be vindicated before the next catalog mailing and rose ordering season commences.[4] There is, therefore, a possibility of redressing the harm to Plaintiffs in part at a later date if the injunction does not issue now. On this record, the Court cannot find that the harm caused to Plaintiffs by denying the injunction is greater than the harm that might be occasioned to Defendants if the requested injunction is granted before a full hearing of the case on the merits.

Because of the resolution of the Motion for a Preliminary Injunction, Defendants' Motion to Strike is moot.

Accordingly, it is *ORDERED* that Plaintiffs' Motion for a Preliminary Injunction be, and it is hereby, *DENIED*. Plaintiffs' Motion for a Temporary Restraining Order is *DISMISSED* as *MOOT*. Defendants' Motion to Strike is also *DISMISSED* as *MOOT*.

So *ORDERED*.

---

3. In the Verified Complaint Brace states that 75% of the orders "can be expected" by the end of April. He gives no basis for his knowledge of this statistic.

4. In *Boston Athletic Association v. Sullivan*, 867 F.2d 22, 26 (1st Cir.1989), the Court of Appeals described an unreported decision under the Lanham Act in which it refused to grant a preliminary injunction on the eve of the Boston Marathon against Defendants who allegedly were selling T-shirts illegally using the mark of Plaintiff, the sponsor of the marathon. Stating that injunctive relief is often appropriate in such cases

because of the intangible nature of the injury, the court refused to restrain the sale of the T-shirts because of "the annual and discrete nature of the harm, the availability of a damages remedy, and the late date at which plaintiff instituted suit." *Id.* In this case the harm apparently is primarily seasonal and although proof may be difficult, Plaintiffs could conceivably recover damages for injury to their business during the current season. The affirmative nature of the relief sought here makes this case even less appropriate for a preliminary injunction than was the case described in *Sullivan*.